1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., et al., | CASE NO. 11-CV-0333 W (RBB) |
| Plaintiffs, | |
| vs. | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION [DOC. 5]** |
| CHRISTOPHER WHITCOMB, individually and d/b/a www.ProSonicview.com, | |
| Defendant. | |

Plaintiffs DISH Newtork L.L.C., EchoStar Technologies L.L.C. and Nagrastar, L.L.C. (collectively, "DISH Network") have filed a motion for a preliminary injunction against Defendant Christopher Whitcomb. Oral argument was held on April 22, 2011. Defendant failed to appear for oral argument, and did not file an opposition to the motion. Having read and considered DISH Networks' moving papers and argument at the hearing, the Court will **GRANT** the motion for preliminary injunction [Doc. 5].

//
//

## I. BACKGROUND

DISH Network provides copyrighted satellite television programing to millions of paying customers throughout the United States. (*Duval Decl.* [Doc. 5-18], ¶ 7.) In order to prevent the unauthorized reception of its programming, DISH Network encrypts the satellite signals so that viewing requires the use of a provided receiver and smart card. (*Id.*, ¶¶ 8–11.) The receiver processes the signal by locating an encrypted part of the transmission—known as the entitlement control message—and forwards that message to the smart card. (*Id.* ¶ 13.) The smart card then uses its decryption keys to unlock the message, uncovering a control word that is transmitted back to the receiver to decrypt the satellite signal, and allowing the customer to view the program. (*Id.* ¶¶ 13–14.)

Various devices have been manufactured to allow individuals to steal or "pirate" DISH Network's programming. (*Duval Decl.*, ¶ 15.) Among the devices are Sonicview receivers and iHub adapters. (*Id.*, ¶ 17–18.) The receivers are programmed with pirate software and connected to the internet via an iHub adapter or a built-in Ethernet port. (*Id.*, ¶17–18.) The internet connection allows the Sonicview receiver to obtain the DISH Network control words from a server and allow viewing of the DISH Network programming. (*Id.*, ¶ 19.)

In 2009, DISH Network filed a lawsuit against Sonicview alleging violations of the Digital Millennium Copyright Act ("DMCA") and related statutes (the "Sonicview Lawsuit") based on its distribution of piracy devices, such as the Sonicvew receiver and iHub adapter. (*See Hagan Decl.* [Doc. 5-2], ¶ 8.) On August 14, 2009, DISH Network filed a motion for preliminary injunction seeking, among other things, to enjoin the sale of these piracy devices. On March 29, 2010, the court entered an order (the "Sonicview Order") enjoining Sonicview and others from "designing, manufacturing, developing, trafficking, selling, and marketing . . . Sonicview iHubs, and Piracy Software at any physical address or on the Internet. . . ." (*See Hagan Decl.*, Ex. 7 at 12:5–12.)

Defendant Whitcomb is a former Sonicview employee. (*Hagan Decl.*, ¶ 7; Ex. 6 at 120:2–124:4.) At the time the Sonicview Order was entered, Whitcomb was engaged in selling the Sonicview iHub on eBay. (*Id.*, ¶ 6; Ex. 5.) In an effort to evade the order, DISH Network alleges that Whitcomb eventually began selling a "re-packaged" iHub under the name "Sonicview SV Lan" and "New Link." (*P&A* [Doc. 5-1], 4:27–5:2 (citing *Jaczewski Decl.* [Doc. 5-16], ¶ 4; and *Hagan Decl.*, ¶¶ 3–5, Exs. 2–4).)

On February 17, 2011, DISH Network filed this lawsuit against Whitcomb asserting causes of action for violation of the DMCA, Communications Act, and Electronic Communications Privacy Act. The lawsuit alleges that Whitcomb unlawfully manufactures, distributes, and traffics devices intended to facilitate the unauthorized reception and decryption of DISH Network's satellite television programming. (*Compl.* [Doc. 1], ¶ 1.)

On February 18, 2011, DISH Network filed the present motion for a preliminary injunction.

## II.   LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a district court has the authority to issue a preliminary injunction in the exercise of its equitable powers. Fed. R. Civ. P. 65. "The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties." <u>Clear Channel Outdoor, Inc. v. City of Los Angeles</u>, 340 F.3d 810, 813 (9th Cir. 2003). The Ninth Circuit recognizes two tests for granting preliminary injunctive relief. <u>Save Our Sonoran, Inc. v. Flowers</u>, 408 F.3d 1113, 1120 (9th Cir. 2005).

To obtain a preliminary injunction under the first, "traditional," test, a plaintiff must show "'(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).'" <u>Save Our Sonoran</u>, 408 F.3d at 1120 (quoting <u>Johnson v. Cal. State Bd. of</u>

1 | Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)).

2 |     To obtain a preliminary injunction under the second, "alternative," test, a plaintiff must demonstrate *either* (1) a combination of probable success on the merits and the possibility of irreparable injury *or* (2) that serious questions are raised and the balance of hardships tips sharply in his favor. Save Our Sonoran, 408 F.3d at 1120 (citing Johnson, 72 F.3d 1430); Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS, 306 F.3d 842, 873 (9th Cir. 2002). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998). Thus, "the greater the relative hardship to the moving party, the less probability of success must be shown." Immigrant Assistant Project, 306 F.3d at 873 (citations). "Conversely, it has been held that a preliminary injunction may be granted even though the harm factor favors defendant if plaintiff demonstrates a substantial likelihood that he will ultimately prevail." Id. (citations).

    "In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992); see also Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Under either test, however, the district court must consider the public interest as a factor in balancing the hardships when the public interest may be affected.").

### III. DISCUSSION

#### A. Probability of Prevailing

In order to prevail under section 1201(a)(2) of the DMCA, DISH Network must prove that the SV Lan and New Link adapters satisfy one of the following criteria: (1) the devices are designed or produced for circumventing a measure that controls access to a copyrighted work; (2) the devices have limited commercial purpose or use

other than circumventing an access control measure; or (3) the devices are marketed for use in circumventing an access control measure. 17 U.S.C. § 1201(a)(2).

In order to establish a likelihood of prevailing on the DMCA claim, DISH Network provided the declaration of Nigel Jones, an engineer with over 25 years of experience designing and analyzing sophisticated electronic systems. (*Jones Decl.* [Doc. 5-14], ¶¶ 3.) Jones has analyzed numerous satellite piracy devices, and has substantial knowledge of security systems implemented to protect satellite signals from piracy devices. (*Id.*, ¶ 3.)

Jones analyzed the SV Lan and New Link adapters and, based on his findings, concluded that the devices "are designed explicitly to circumvent the DISH Network security system and intercept DISH Network programming . . . " and that they "have no legitimate commercial application." (*Jones Decl.*, ¶¶ 15–16, 27b–c.) Specifically, Jones found that neither the SV Lan nor New Link adapter comes with a user manual or any other type of instructions for using the device, which is contrary to how serial-to-Ethernet adapters are typically sold. (*Id.*, ¶¶ 15, 24.) Each device also lacks "plug and use" capabilities because, for among other reasons, there is no means provided for powering or configuring the serial communications parameters for the devices, there is no direct means for ascertaining the devices' IP address, and no driver to establish a COM port through which communications may be exchanged with either the SV Lan or New Link adapters. (*Id.*, ¶¶ 16, 24.)

Jones also opined that the lack of a power supply severely limits the types of devices with which the SV Lan and New Link may be used; specifically, they may only be used with receivers that incorporate a non-standard serial port. (*Id.*, ¶¶ 17, 18, 24.) And although the devices are advertised for use in connection with Sonicview receivers, Jones found that the SV Lan only functioned if the Sonicview receiver was loaded with piracy software. (*Id.*, 18.)

Because the SV Lan and New Link adapters are designed to explicitly circumvent the DISH Network security system, and have no legitimate commercial application,

DISH Network has demonstrated a substantial likelihood of prevailing on the merits of its DMCA claim.[1]

### B. Balance of Hardships / Irreparable Harm

Defendant Whitcomb has not opposed the preliminary-injunction motion, and thus there is no evidence that he will suffer any hardship or irreparable harm by the proposed preliminary injunction. In contrast, DISH Network has established that if Whitcomb is allowed to continue selling the piracy devices and dispose of his assets, DISH Network will continue to suffer irreparable harm due to the lost profits and subscribers resulting from Whitcomb's conduct. Additionally, without the preliminary injunction, DISH Network's ability to recover any of its damages will be further diminished. Accordingly, the Court finds the balance of hardships and irreparable harm heavily favor DISH Network.

### C. The Public Interest

The public has a strong interest in enforcing anti-piracy legislation, such as the DMCA and Communications Act. See Coxcom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) ("the fourth factor, the public interest, further supports the issuance of the injunction; the public has an interest in the enforcement of federal statutes."); Comcast Cable Commc'ns v. Narcisi, 2007 WL 895702, * 6 (D.J.N Mar. 20, 2007) ("Permitting individuals like Defendant to misappropriate the goods and services of others unscathed would diminish the incentive to produce or market those products for the benefit of the

---

[1] Jones also opined that the "SV-Lan and New Link adapters are simply an improved iHub." (Jones, ¶¶ 8–14, 27a.) In the Sonicview Lawsuit, the court found that the iHub "'has only limited commercially significant purpose or use other than' circumventing [DISH Network's] encryption and other security measures, and appears to be 'primarily designed or produced for' piracy or assisting Sonicview customers in piracy." (See Sonicview Order, 8:27–9:2.) The Sonicview Order, therefore, also supports this Court's finding that DISH Network has a substantial likelihood of succeeding on its DMCA claim.

1 public at large."). Accordingly, the Court finds that the public interest favors DISH
2 Network.
3
4 **IV. CONCLUSION AND ORDER**
5       For the reasons discussed above, the Court **GRANTS** DISH Network's motion
6 for a preliminary injunction [Doc. 5], and **ORDERS** as follows:
7     1.    Defendant Christopher Whitcomb, and all directors, officers, agents,
8         servants, employees, attorneys and all persons and entities in active
9         concert or participation therewith, including, but not limited to,
10         manufacturers, distributors, retailers and cooperative members are
11         <u>enjoined and must restrain</u> from directly or indirectly:
12         (a)    manufacturing, developing, importing, offering to the public
13                 (including, but not limited to, through internet websites or
14                 auctions), promoting, distributing, providing or otherwise
15                 trafficking in Sonicview iHubs, SV Lan adapters, New Link
16                 adapters, or any other device designed to connect to internet
17                 key sharing servers for the purpose of receiving DISH
18                 Network programming without authorization;
19         (b)    manufacturing, developing, importing, offering to the public
20                 (including, but not limited to, through internet websites or
21                 auctions), promoting, distributing, providing or otherwise
22                 trafficking in serial numbers, authorization codes, or upgrades
23                 for Sonicview iHubs, SV Lan adapters, New Link adapters, or
24                 any other device designed to connect to internet key sharing
25                 servers for the purpose of receiving DISH Network
26                 programming without authorization;
27         (c)    receiving or assisting others in receiving without
28                 authorization DISH Network's satellite signals or other

electronic communications originating from DISH Network's system;

(d) transferring, removing, encumbering, or permitting withdrawal of any assets or property belonging to Defendant and related to Defendant's trafficking in Sonicview iHubs, SV Lan adapters, New Link adapters, and serial numbers, authorization codes, or upgrades for Sonicview iHubs, SV Lan adapters, and New Link adapters, whether real or personal, tangible or intangible, including cash, bank accounts of any kind, stock accounts, bonds, and title to Defendants' business property; and

(e) destroying, hiding, or altering any books or records, whether in hard copy or electronic form, concerning the satellite receiver business or finances of Defendant, including invoices, purchase orders, receipts, shipping records, banking or investment records, or any documents that identify manufacturers, exporters, importers, dealers, or purchasers of Sonicview receivers, 8PSK Turbo Boards or modules, Sonicview iHubs, SV Lan adapters, New Link adapters, software for these devices, and serial numbers, authorization codes, or upgrades for Sonicview iHubs, SV Lan adapters, and New Link adapters, or persons involved in operating any IKS server or receiving control words from same.

2. No later than three (3) court days from the filing of this Order, Defendant must provide DISH Network a written accounting of all assets and property belonging to Defendant, which in the case of any bank account shall include the account name, number, current balance, and location of the bank or other custodian holding such account.

3. No bond shall be required.

This preliminary injunction shall take effect immediately and remain in effect pending entry of a final judgment or further order of the Court.

**IT IS SO ORDERED.**

DATED: April 25, 2011

_____
Hon. Thomas J. Whelan
United States District Judge